**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                      Centennial, CO 80112<br>Telephone:      303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |

**DISTRICT COURT (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1.      This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result on a clerk's show cause order requiring its filing.

2.      Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check on box if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐   This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☐   This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

## EXHIBIT A

> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐  Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.  ☐  This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Dated: July 29, 2022

Respectfully submitted,

By:  */s/ Michael A. Freimann*
Michael Freimann, Atty. Reg. No. 35430
Kathleen F. Guilfoyle, Atty. Reg. No. 55284
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
mfreimann@atllp.com
kguilfoyle@atllp.com

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY,<br>STATE OF COLORADO<br>7325 South Potomac Street<br>Centennial, Colorado 80112<br><br>Plaintiff(s): Kristina Meyer<br><br>v.<br><br>Defendant(s): BioMedGPS, LLC | DATE FILED: July 29, 2022 3:19 PM<br>CASE NUMBER: 2022CV31421<br><br><br>▲ COURT USE ONLY ▲<br><br>Case Number: 22CV31421<br>Div. 202 |

**DELAY REDUCTION ORDER**
**(FOR CASES FILED ON OR AFTER JULY 1, 2015)**

This Court is on a delay reduction docket.

    A.   For all civil actions, the following deadlines must be met:

        1.   <u>Service of Process</u>:  Returns of service on all defendants shall be filed within **63 days** after the date of the filing of the complaint.

        2.   <u>Default Judgment</u>:  Application for default judgment shall be filed within **35 days** after default has occurred.

        3.   <u>Case Management</u>:  Whether a Case Management Conference is required is determined by each Division.

        4.   <u>Trial Setting</u>: Parties shall comply with the procedure for setting trial as determined by the Judge presiding over the Division to which the case has been assigned.

            a.   Actions governed by C.R.C.P. 16 shall be set for trial within **49 days** of the "at issue" date and generally trial will be set within **1 year** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

            b.   Actions governed by C.R.C.P. 16.1 shall be set for trial within **42 days** of the "at issue" date and generally trial will be set within **6 months** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

    B.   A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

**EXHIBIT A**

C.   Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

D.   Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.   If an attorney or self-represented party failed to comply with the Order, the Court may dismiss the case without prejudice.

Date:  7/29/2022

BY THE COURT:
ASSIGNED JUDGE

# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Court Address:<br>7325 S POTOMAC ST, CENTENNIAL, CO, 80112<br><br>**Plaintiff(s)** KRISTINA MEYER<br>v.<br>**Defendant(s)** BIOMEDGPS LLC | DATE FILED: July 29, 2022 3:39 PM<br>CASE NUMBER: 2022CV31421<br><br><br><br>⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2022CV31421 |
| | Division: 202      Courtroom: |
| **Order:Order Denying Plaintiff's Motion for Temporary Restraining Order** | |

The motion/proposed order attached hereto: DENIED.

Plaintiff is seeking a restraining order to "enjoin" her former employer from "threatening legal action." This request does not state a "real" or imminent threat to plaintiff that would warrant an immediate ex parte order. Plaintiff has filed a complaint for declaratory relief to generally determine the validity and/or effect of "Confidentiality/Non-Disclosure Agreement" with her former employer. While there may be valid grounds to seek judicial interpretation of the contract, the Employer/Defendant has not failed any action against Plaintiff or sought any legal restraint on her employment or activities. At best, it appears that the parties have had discussions about the legal meaning or impact of the subject agreement. This is insufficient to support a TRO.

Issue Date:  7/29/2022

ELIZABETH BEEBE VOLZ
District Court Judge

## EXHIBIT A

<table>
<tr>
<td colspan="2">

DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO

Court Address:   7325 S. Potomac Street
                 Centennial, CO 80112

Telephone:       303-645-6600

</td>
<td rowspan="2">▲ COURT USE ONLY ▲</td>
</tr>
<tr>
<td>

**Plaintiff:**

Kristina Meyer

v.

**Defendant:**

BioMedGPS, LLC d/b/a SmartTRAK

</td>
</tr>
<tr>
<td>

*Attorneys for Plaintiffs:*
Michael Freimann, Atty. Reg. No. 35430
Kathleen F. Guilfoyle, Atty. Reg. No. 55284
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Phone Number: 720-200-0676
Fax Number: 720-200-0679
E-mail: mfreimann@atllp.com
kguilfoyle@atllp.com

</td>
<td>

Case Number:

Div.:

</td>
</tr>
</table>

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to C.R.C.P. 65(b), Plaintiff Kristina Meyer ("Plaintiff" or "Ms. Meyer") moves for a temporary restraining order in the form attached. The grounds for this Motion are set forth in Plaintiff's Memorandum of Law in Support of Motions for Temporary Restraining Order and Preliminary Injunction, which is being filed contemporaneously with this Motion.

The undersigned counsel certifies that Ms. Meyer notified Defendants of her intent to seek immediate injunctive relief on July 29, 2022, by communicating via telephone to Defendant's counsel, as well as sending the Verified Complaint, Motions for Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in Support of those

# EXHIBIT A

motions, and related Proposed Orders by email. Counsel will coordinate with Defendants for the earliest possible hearing on the temporary restraining order if the Court determines one is necessary. As described in the Verified Complaint, Plaintiff seeks immediate injunctive relief to protect herself from the irreparable harm that may be done to her livelihood if Defendants are not restrained or enjoined from threatening legal action against Ms. Meyer and allowing her to perform her job without any encumbrances.

Granting a temporary restraining order will permit Ms. Meyer a modest amount of time to conduct limited discovery to further support its Motion for a Preliminary Injunction.

WHEREFORE, Plaintiff Kristina Meyer respectfully requests this Court enter a Temporary Restraining Order in the form attached hereto and set a hearing to consider and grant a preliminary injunction.

Dated:  July 29, 2022                                    Respectfully submitted,


*/s/ Michael A. Freimann*_____
Michael A. Freimann, Atty. Reg. No. 35430
Kathleen F. Guilfoyle, Atty. Reg. No. 55284
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
mfreimann@atllp.com
kguilfoyle@atllp.com

*Attorneys for Plaintiff*
*Kristina Meyer*

2

EXHIBIT A

# EXHIBIT A

# EXHIBIT A

## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

As a condition of my working relationship with BioMedGPS LLC, a California limited liability company (the "Company"), whether as an employee or an independent contractor, and in consideration of such working relationship with the Company and my receipt of compensation now and hereafter paid to me by the Company, I hereby agree as follows:

**1. DEFINITIONS.** As used in this Agreement, the following terms have the following meanings:

(1)     "Proprietary Information" shall mean information disclosed to me, either directly or indirectly, in writing or orally or by drawings or observation, known to me, or developed by me, alone or with others, in connection with my working relationship with the Company: (i) that is not generally known in the industry in which the Company is or may become engaged; (ii) that has been created, discovered, developed, or otherwise become known to the Company or in which property rights have been assigned or otherwise conveyed to the Company; and (iii) that has material economic value or potential material economic value to the Company's present or future business. Without limiting the generality of the foregoing, Proprietary Information shall include trade secrets (as defined under the version of the Uniform Trade Secrets Act adopted and in effect in the State of California from time-to-time during the term of this Agreement) and all other discoveries, developments, designs, improvements, inventions, formulas, software programs, processes, techniques, know-how, negative know-how, data, research, techniques, technical data, customer and supplier lists, and any modifications or enhancements of any of the foregoing, and all Company program, pricing, marketing, sales, business contract, or other financial or business information.

(2)     "Rights" means all patents, trademarks, service marks and copyrights, and other recognized proprietary rights pertaining to Proprietary Information or work product.

**2. DUTY OF TRUST AND CONFIDENTIALITY.**  I acknowledge that my working relationship with the Company creates in me a duty of trust and confidentiality to the Company with respect to the Proprietary Information or any other information related, applicable, or useful to the Company's business, including the Company's anticipated research and development; resulting from tasks assigned to me by the Company; resulting from the use of equipment, supplies, or facilities owned, leased, or contracted for by the Company; or related, applicable, or useful to the business of any of the Company's clients or customers, which may be made known to me by the Company or by such client or customer, or developed or otherwise learned by me during the course of my working relationship with the Company.

**3. NON-DISCLOSURE AND PROTECTION OF PROPRIETARY INFORMATION.** At all times, both during my working relationship with the Company and after the cessation of that relationship for whatever reason, I will not, directly or indirectly, except as required by the normal business of the Company or as expressly consented to in writing and in advance by the President of the Company:  disclose, publish, or make available, other than to an authorized employee, officer, or director of the Company, any Proprietary Information or Rights; sell, transfer, or otherwise use or exploit any Proprietary Information or Rights; or retain upon termination of my working relationship with the Company any Proprietary Information or Rights, any copies thereof, or any other materials containing or constituting Proprietary Information or Rights.

**4. ASSIGNMENT OF WORK PRODUCT.**  I acknowledge and agree that all copyrightable Work Products prepared by me within the scope of my working relationship with the Company are "works made for hire" and consequently, that the Company owns all copyrights thereto and all interests therein.  I hereby assign to the Company all right, title and interest (including but not limited to all patent, copyright, and trade secret rights) in and to all Work Products prepared by me, whether patentable or not, made or conceived in whole or in part by me within the scope of my working relationship with the Company, or that relate directly to, or involve the use of Proprietary Information or Rights.

**5. NONCOMPETITION AND NONINTERFERENCE WITH BUSINESS.**  I agree that during my working relationship with the Company, I shall not directly or indirectly engage in any employment, occupation, consulting, or other business activity which the Company shall determine in good faith to be in competition with the Company or to interfere with my duties as an employee or independent contractor of the Company; not engage in any business enterprise that would be in competition with the Company; and not enter into, be engaged or interested,

Scanned with CamScanner

# EXHIBIT A

as a stockholder (owning more than 10%), officer, agent, employee or otherwise, in any business or undertaking which may compete in any manner with that of the Company.

Following the termination of my working relationship with the Company, I agree that I shall not engage in unfair competition with the Company, aid others in any unfair competition with the Company, in any way breach the confidence that the Company placed in me during my working relationship with the Company, misappropriate any Proprietary Information or Rights, or breach any of my duties or obligations to the Company or any third party under this Agreement or any other agreement to which I am a party that relates to the subject matter hereof.

6.      **NON-SOLICITATION OF EMPLOYEES.**  During the period of my working relationship with the Company, I shall not disrupt, damage, impair, or interfere with the business of the Company by interfering with or "raiding" Company employees by directly or indirectly soliciting Company employees to work for any individual or entity then in competition with the Company.

7.      **RETURNING COMPANY DOCUMENTS AND THINGS.**  On termination of my working relationship with the Company for whatever reason, I shall not take and I shall return to the Company, all original copies and all reproductions of Proprietary Information, including but not limited to devices, records, sketches, reports, notebooks, proposals, lists, correspondence, equipment, documents, computer diskettes, photographs, negatives, undeveloped film, notes, drawings, specifications, tape recordings or other electronic recordings, programs, data, or other materials or property of any nature belonging to the Company or pertaining to my work with the Company.

8.      **GENERAL.**  It is understood and agreed that the construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of California. The provisions of this Agreement are divisible, and if any such provision shall be deemed invalid or unenforceable, such provision shall be deemed limited to the extent necessary to render it valid and enforceable and the remaining provisions of this Agreement shall continue in full force and effect without being impaired or invalidated in any way. No waiver by the Company of any breach, failure, right, or remedy shall be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, nor shall any waiver constitute a continuing waiver. In any action or proceeding arising out of this Agreement (whether in contract, tort, and/or equity), the prevailing party shall be awarded reasonable legal fees, together with any allowable costs and expenses, to resolve the dispute and to enforce the final judgment. This Agreement may be supplemented, amended, or modified only by the mutual written agreement of the parties. No supplement, amendment, or modification of this Agreement shall be binding unless it is in writing and signed by both me and the Company. This Agreement constitutes the final, complete, and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous understandings or agreements of the parties. No party has been induced to enter into this Agreement by, nor is any party relying on, any representation or warranty outside those expressly set forth in this Agreement. I understand and acknowledge that this Agreement does not alter, amend, or expand upon any rights I may have to continue in my working relationship, or the duration of my working relationship with, the Company under any existing agreements between the Company and me or under applicable law. I further understand and acknowledge that my working relationship with the Company is and shall continue to be "at will," as defined under applicable law, meaning that either I or the Company may terminate such relationship at any time for any reason or no reason, without further obligation or liability.

Scanned with CamScanner

**EXHIBIT A**

I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD AN OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND I HAVE READ AND UNDERSTOOD ALL THE TERMS OF THIS AGREEMENT.

Dated:

_Kristina M.W. Meyer_
[signature]

Kristina M.W. Meyer
[print name]

4333 East Links Pkwy
[address]

Centennial, CO 80122

Scanned with CamScanner

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                    Centennial, CO 80112<br>Telephone:      303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to C.R.C.P. 65(a) and (b), Plaintiff Kristina Meyer ("Plaintiff" or "Meyer") submits the following memorandum of law in support of its Motion for Temporary Restraining Order and Motion for Preliminary Injunction. For the reasons set forth below, Meyer respectfully requests the Court grant the relief sought in her Motions.

**EXHIBIT A**

## **INTRODUCTION**

Until recently, Meyer was the Chief Commercial Officer at Defendant BioMedGPS d/b/a SmartTRAK ("BioMedGPS" or "Defendant"). After approximately two years of enduring BioMedGPS' untenable work environment, Meyer gave her two-weeks' resignation notice on June 13, 2022. Shortly thereafter, Meyer joined AcuityMD. Significantly, AcuityMD sells a complimentary product to BioMedGPS and is not a competitor.

Since Meyer's departure from BioMedGPS, Defendant has threatened myriad of legal actions against Meyer that have impeded Meyer's ability to perform the duties of her new role with AcuityMD, including preventing Meyer from attending a trade conference. At its core, Defendant believes Meyer breached a Confidentiality/Non-Disclosure Agreement by downloading a Master Sales Tracker document ("MST") and by returning her company laptop with the manufacturer default settings. It also demanded that for a period of one year, Meyer not attend any industry conferences or contact any of her former BioMedGPS customers.

BioMedGPS insisted that Meyer provide it with an affidavit attesting that she had not provided any BioMedGPS confidential or proprietary information to her new employer, AcuityMD. Meyer agreed to provide this affidavit. BioMedGPS also demanded access to Meyer's personal laptop so that a third-party forensics expert could examine it and make "ghost image" of the laptop. BioMedGPS has refused to agree to any restrictions or parameters on this intrusive search. Despite Meyer's assurances that she has not violated any confidentiality obligations, BioMedGPS continues to threaten legal action and has recently involved Meyer's new employer, AcuityMD, by demanding that it too provide an affidavit.

Based on BioMedGPS's insistence that Meyer has breached agreements and that she may not legally engage in her new employment without encumbrances, Meyer seeks declaratory

judgment from this Court, as detailed in her Complaint, that Meyer has not breached any agreement between the Parties, that Meyer is not required to turn over her personal laptop to BioMedGPS, that there is not a valid or enforceable non-compete or non-solicitation of customers agreement between the Parties, and that Meyer may fully engage in her new employment with limitations, including by attending and participating in any trade conference and engaging her former customers, as well as further declarations that the Court may find necessary.

Meyer also seeks immediate injunctive relief.  Meyer does not pursue this action lightly.  But the current and on-going encumbrances that BioMedGPS is attempting to place on Meyer's ability to perform her job, in addition to the heavy weight of the threat of litigation hanging over Meyer's head, have brought Meyer to seek remedies from this Court.  Without immediate injunctive relief from this Court, Defendant will only continue its campaign to prevent Meyer from earning a living and to punish her for the efforts she took to resolve the work environment problems at BioMedGPS during her employment and making the difficult decision to leave the toxicity and seek a livelihood elsewhere.  Additionally, the customers which Meyer is seeking to present her new employer's services and products make their business and budgetary decisions for 2023 within the next month or two.  If BioMedGPS continues to threaten whom Meyer can or cannot meet with, Meyer will be irreparably harmed.

## **STATEMENT OF FACTS**

### A.      **The Parties**

Meyer is an individual residing in Arapahoe County, Colorado. (Verified Compl. ¶ 12.)  BioMedGPS is a limited liability company formed in the State of California with its principal place of business in Irvine, California.  (*Id.* ¶ 13.)  BioMedGPS is in the life sciences industry

and provides online business intelligence and decision-making tools for life sciences product management professionals.

**B.**    <u>**Meyer's Employment by BioMedGPS**</u>

In March 2015, Meyer began working for BioMedGPS as an independent contractor in the role of Lead Analyst, Sports Medicine.  (*Id.* ¶ 17.)  In September 2018, Meyer officially joined BioMedGPS in the dual role of Lead Analyst, Sports Medicine and Director of Sales.  (*Id.* ¶ 18.) In January 2020, Meyer was promoted to VP of Sales.  (*Id.* ¶ 19.)  In January 2021, Meyer was again promoted, this time to Chief Commercial Officer.  (*Id.* ¶ 20.)  As part of their working relationship, the Parties have executed several written contracts.  (*Id.* ¶ 21.)  These include a Confidentiality and Non-Disclosure Agreement, attached to Plaintiff's Complaint as Exhibit A. (*Id.* ¶ 22.)  The Parties have not executed any written non-compete or non-solicitation of customers agreements.  (*Id.* ¶ 23.)

**C.**    <u>**Meyer's Resignation**</u>

Beginning around mid-2020, Meyer noticed a significant shift in BioMedGPS's culture and environment.  (*Id.* ¶ 24.)  Specifically, Sharon O'Reilly, CEO of BioMedGPS, became highly critical and demanding, creating an extremely stressful environment where workers were degraded and ignored.  (*Id.* ¶ 25.)  Meyer acted as a buffer between O'Reilly and many employees struggling under the stress created by O'Reilly.  (*Id.* ¶ 26.)  Meyer was often contacted by these employees to discuss their frustrations.  (*Id.*)  These reports concerned Meyer deeply.  Meyer also was concerned by instances of nepotism and sexism on display from O'Reilly.  O'Reilly hired her brother, Ray Luzi, as a VP at the start of 2022, without alerting the CFO of BioMedGPS that Luzi had never held a VP role or similar position and without conducting an external search to fill the role with a more qualified candidate.  (*Id.* ¶ 28.)  Luzi was unqualified to hold his position and had

a negative effect on employee morale.  (*Id.* ¶ 29.)  O'Reilly also repeatedly commented that "she should hire a young, pretty girl to hand out gift cards to CEOs to get their attention" and also talked often about how she hired attractive women and told people that the attractive women employed by BioMedGPS were her "Charlie's Angels."  (*Id.* ¶ 30.)  In short, O'Reilly created an uncomfortable, harsh, unfair, and frustrating work environment that caused many workers to leave the company.  (*Id.* ¶ 32.)

Meyer made many attempts to resolve the work environment problems.  These efforts included speaking with co-workers to troubleshoot the issues.  Meyer also directly spoke to O'Reilly about these concerns, hoping that such discussion would lead to a resolution.  (*Id.* ¶ 31.) It did not.  (*Id.* ¶ 33.)

As a result, Meyer made the decision to resign from BioMedGPS.  (*Id.* ¶ 34.)  Meyer received and accepted an offer to join AcuityMD, a company that sells complementary products to BioMedGPS's products.  BioMedGPS and AcuityMD are not direct competitors.  (*Id.* ¶ 35.)  On June 13, 2022, Meyer gave two-weeks' notice to O'Reilly, and asked what steps she could take to help facilitate the transition.  O'Reilly did not give Meyer any specific direction in response, but vaguely told Meyer "to do what [Meyer] thought was right."  (*Id.* ¶ 36.)  Meyer believed that the right thing included assisting her team's transition.  To that end, Meyer downloaded the MST document containing project and sales information.  Meyer's intent was to use the document to help prepare her team for her departure by reassigning open accounts, adjusting quotas, assessing outstanding commissions and planning proper and professional account handoffs.  Meyer, along with Geoffrey Brown, GM of Sales Operations, routinely used this document for sales tracking and territory planning.  (*Id.* ¶ 37.)  The document is, in fact, sent via email with the weekly sales call notes and routinely used by the sales team as a whole.  (*Id.* ¶ 38.)  Having given her two-

weeks' notice that day, Meyer assumed she was still under BioMedGPS's employ and would have the next two weeks to help facilitate the transition.

Later on June 13, BioMedGPS shut off Meyer's access to the internal network, and notified Meyer that it did not want her assistance to transition her work and was ending her employment with BioMedGPS that same day.  (*Id.* ¶ 39.)  Meyer was told by Don Urbanowicz, BioMedGPS's former COO, via a telephone call that her employment was terminated as of 5:00 p.m. MDT on June 13th, and that someone would come to her home to pick up her laptop and that she would be hearing from BioMedGPS lawyers.  No other direction or advice was offered regarding the proper method of returning her company laptop.  (*Id.* ¶ 40.)  Meyer knew that others had returned company laptops with the manufacturer default settings, including three director-level employees.  Meyer has since again verified this fact with those three departed employees. As a member of the executive team, Meyer had never heard a complaint about the laptops returned in this state.  (*Id.* ¶ 41.)  Believing this to be the proper procedure, Meyer wiped her company laptop and returned the laptop with the manufacturer default settings. Meyer did not individually delete any files or emails from the laptop. She believed any emails or other documents needed by BioMedGPS were available to BioMedGPS through its internal network, and she had no intent to hide any activity, documents, or other information from BioMedGPS.  (*Id.* ¶ 42.)

D.      **BioMedGPS's Treatment of Meyer After She Resigned**

Shortly after her employment with BioMedGPS ended, Meyer began her employment with AcuityMD.  (*Id.* ¶ 43.)  This role requires that Meyer use her expertise in the field, including attending trade conferences as an AcuityMD representative and engaging her contacts she created and maintained over the course of her career.

**EXHIBIT A**

A few days after June 13, 2022, Meyer heard from BioMedGPS's lawyers.  (*Id.* ¶ 44.)
BioMedGPS' counsel sent a separation agreement letter outlining the commissions and expense
report amount owed to Meyer, but also stating that they would strictly enforce her "non-compete"
and requested a waiver from Meyer of any claims against them.  (*Id.* ¶ 45.)  BioMedGPS's own
CFO, Marie May, warned Meyer against signing the document, believing the intention behind the
document was to obtain a waiver through promising payment of owed commissions only upon
signature.  (*Id.* ¶ 46.)

On June 27, 2022, Meyer again heard from BioMedGPS's lawyer, this time accusing
Meyer of breaching her obligations under the Confidentiality/Non-Disclosure Agreement.  (*Id.* ¶
47.)  The June 27 letter incorrectly states that Meyer downloaded the MST document after she was
informed that her access to BioMedGPS's internal network would be shut off and that she had
never before downloaded the MST.  (*Id.* ¶ 48.)  Further, the June 27 letter accuses Meyer of
downloading the document with the intent to retain and use any confidential information in the
MST document in her new employment with AcuityMD. (*Id.* ¶ 49.)  The letter also accuses Meyer
of intentionally destroying company proprietary data in resetting her company laptop to its
manufacturer default settings in violation of her obligations under the Confidentiality/Non-
Disclosure Agreement and "applicable law."  (*Id.* ¶ 50.)

In the June 27 letter, BioMedGPS made several demands, including that Meyer (1) return
any BioMedGPS proprietary information, (2) destroy any copies of proprietary information stored
on electronics, and (3) sign a statement that Meyer is in compliance with her duties of
confidentiality and non-disclosure and that she has not shared any proprietary information with
any third party.  (*Id.* ¶ 51.)  Without citing a contractual provision for its basis, BioMedGPS also

## EXHIBIT A

demanded that that for a period of one year, Meyer will not attend any industry conferences or contact any of her former BioMedGPS customers.  (*Id.* ¶ 52.)

Indeed, on July 13, 2022, BioMedGPS threatened injunctive legal action if Meyer were to attend a trade conference in Colorado Springs scheduled to begin the next day. As a result, Meyer voluntarily did not attend the trade conference.  (*Id.* ¶ 53.)  A large portion of attendees at the July 14-15 conference were Meyer's contacts prior to joining BioMedGPS. By insisting Meyer not attend, BioMedGPS effectively cost Meyer the opportunity to perform the duties of her new role with AcuityMD and potentially engage customers who would be interested in AcuityMD's services and products.  (*Id.* ¶ 54.)

BioMedGPS has since made further demands, including that Meyer (1) provide BioMedGPS with any emails Meyer sent to AcuityMD from her personal email account while employed by BioMedGPS, (2) allow BioMedGPS to take a "ghost image" of her personal laptop, and (3) provide an affidavit that Meyer has not given AcuityMD any BioMedGPS confidential or proprietary information.  (*Id.* ¶ 55.)  BioMedGPS is also seeking an affidavit from AcuityMD swearing the same.  (*Id.* ¶ 56.)

Meyer has destroyed the sole copy of the MST document in her possession and does not have other BioMedGPS confidential or proprietary information (although Meyer does not concede that this information was either). (*Id.* ¶ 57.)  Meyer agreed to provide an affidavit attesting she has not violated and has no intention of violating the Confidentiality/Non-Disclosure Agreement, that the sole copy of the MST document in her possession was destroyed, and that she has not provided any confidential or proprietary information to AcuityMD.  (*Id.* ¶ 58.)  These assurances are apparently not enough for BioMedGPS, as it continues to insist that Meyer hand over her personal

laptop for a ghost image to be created and inspect any emails she has sent to her current employer AcuityMD.  (*Id.* ¶ 59.)

Meyer cannot agree to provide her personal laptop, which contains private and confidential financial, medical, and other information BioMedGPS has no right to examine.  (*Id.* ¶ 60.)  It is not clear why BioMedGPS needs to examine Meyer's computer if they are also requesting that she submit a sworn affidavit.  (*Id.* ¶ 61.)  Meyer wants to commence her new job but is concerned that any action she takes will result in BioMedGPS falsely claiming she violated an agreement and attempting to obtain injunctive relief.  (*Id.* ¶ 62.)  Meyer has tried to amicably resolve this dispute with BioMedGPS but its list of demand continues to grow and become more and more unreasonable. BioMedGPS has now directly involved AcuityMD.  (*Id.* ¶ 63.)  For example, BioMedGPS's latest attempt to intimidate Meyer into not pursuing gainful employment with AcuityMD and handing over a personal laptop includes threatening to sue Meyer for trade secret misappropriation and violations of the Computer Fraud and Abuse Act.  (*Id.* ¶ 64.)  Meyer believes these tactics are in retaliation for her voicing concerns of O'Reilly's leadership and related decision to leave the company.

**E.    Irreparable Harm of BioMedGPS' Conduct**

Defendant's actions have caused and will continue to cause irreparable harm to Meyer.  As detailed above, BioMedGPS has already once succeeded in preventing Meyer from attending an important trade conference.  Without immediate injunctive relief enjoining BioMedGPS from trying to enforce made up legal violations and placing restrictions on what Meyer can or cannot do, there will be imminent, irreparable harm.  Most obviously, Meyer could lose her job.  Meyer could also be forced to forfeit her ability to bring AcuityMD new customers.  And, significantly, many customers are currently setting their 2023 budgets.  If Meyer is unable to perform her job

EXHIBIT A

duties, even for a short period of time pending resolution of a preliminary injunction, she risks losing these customers' business for over a year, which could have an impact on her financial status as well as her ability to maintain her employment.

## ARGUMENT

## I.      PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

To obtain a temporary restraining order or a preliminary injunction, Meyer must show: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief; (3) the lack of a plain, speedy, and adequate remedy at law; (4) no disservice to the public interest; (5) the balance of equities in favor of the injunction; and (6) the preservation, by the injunction, of the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982); *see also Kourlis v. Dist. Ct., El Paso Cnty.*, 930 P.2d 1329, 1335 (Colo. 1997).  Moreover, a temporary restraining order is particularly appropriate when immediate and irreparable injury, loss, or damage will result before the defendants can be heard in opposition.  C.R.C.P. 65(b).  As set forth below, all of the elements necessary for the issuance of a temporary restraining order and a preliminary injunction are satisfied in this case.

## A.      There Is More Than A Reasonable Probability That Plaintiff Will Prevail On The Merits Of Her Declaratory Judgment Act Claim.

Meyer will ultimately prevail on her request for declaratory judgment.  As detailed in her Complaint, Meyer has not breached any agreement or violated any law.  Additionally, Meyer has never shared any of BioMedGPS' alleged confidential or proprietary information.  And, although Meyer agreed to attest to this, BioMedGPS chose to ignore it and instead opted to continue with its harassment and bullying.

10

**EXHIBIT A**

Colorado's Uniform Declaratory Judgment Act provides, in its pertinent part:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Colo. Rev. Stat. § 13-51-106.   A declaratory judgment action is appropriate when the rights asserted by the plaintiff are present and cognizable.  *Lot Thirty–Four Venture, L.L.C. v. Town of Telluride*, 976 P.2d 303, 307 (Colo. App. 1998).  A court should issue a declaratory judgment only where it would terminate the uncertainty or controversy giving rise to the proceeding.  *See* C.R.S. § 13–51–110; C.R.C.P. 57(f).  Thus, In Colorado, a party to a contract may seek declaratory judgment to determine unclear rights and/or obligations.  *See Berenergy Corp. v. Zab, Inc.*, 94 P.3d 1232, 1235 (Colo. Ct. App. 2004).  A party may also seek declaratory judgment to determine whether a valid contractual obligation exists or does not exist.  *See id.* at 1236 ("Although § 13–51–106 and C.R.C.P. 57(b) detail situations in which declaratory judgment actions may be brought, they do not restrict the court's ability to grant declaratory relief in other situations when appropriate.").

Meyer's rights are present and cognizable.  (Verified Compl. ¶¶ 70–72.)  A declaratory judgment from this Court will fully and finally resolve this controversy.  (*Id.* ¶ 73.)  Meyer has a reasonable probability of success on the merits.

**B.      Plaintiff Faces Irreparable Harm Absent Immediate Injunctive Relief.**

"'Irreparable harm' is a pliant term adaptable to the unique circumstances that an individual case might present." *Gitlitz v. Bellock*, 171 P.3d 1274, 1278–79 (Colo. App. 2007).  "Generally, irreparable harm has been defined as 'certain and imminent harm for which a monetary award does not adequately compensate.'"  *Id.* at 1279 (quoting *Wisdom Import Sales Co., L.L.C. v. Labatt*

*Brewing Co., Ltd.*, 339 F.3d 101, 113 (2nd Cir. 2003)).  An injury may be irreparable . . . where monetary damages are difficult to ascertain or where there exists no certain pecuniary standard for the measurement of the damages." *Id.*

Here, Defendant's conduct has and will continue to irreparably harm Meyer.  Again, BioMedGPS has already once succeeded in preventing Meyer from attending an important trade conference.  This cost Meyer the opportunity to work current contacts and gain customers for AcuityMD.  Without immediate injunctive relief enjoining BioMedGPS from trying to enforce made up legal violations and placing restrictions on what Meyer can or cannot do, Meyer could lose her job.  Meyer will also be forced to continue to forfeit her ability to bring AcuityMD new customers.

And, significantly, the timing of this injunctive relief is critical.  Within the next month, Meyer's current customers are setting their budgets for 2023.  If Meyer is not given the opportunity to meet with them and attempt to sell them on AcuityMD's product and services, she will not be able to sell anything until the customers are considering their subsequent years' budgets.  BioMedGPS has continually threatened legal action against Meyer if she speaks with any of her old customers, which creates a fragile position and decision for Meyer: Does she pursue her customer base and risk facing an injunction or hold back on meeting with these potential customers and risk losing sales opportunities and potentially her job?  Meyer should not be subjected to such a Hobson's choice.

**C.**  **Injunctive Relief Is Appropriate And No Adequate Remedy At Law Exists.**

Meyer has no plain, speedy, or adequate remedy at law.  Indeed, Meyer is not at this time seeking monetary damages from BioMedGPS.  She only wants to secure her ability to pursue

gainful employment.  Injunctive relief is necessary at this stage for the reasons identified above regarding her ability to secure business right now, which bears on whether she will retain her job.

**D.**      <u>**Granting the Requested Relief Does No Disservice To The Public Interest.**</u>

Granting the requested relief will also not disserve the public interest.  Rather, it will serve deep policy goals of this state: Colorado has a strong public policy favoring individuals' freedom to pursue gainful employment without being subjected to restrictive covenants. *See* C.R.S. § 8-2-113.  Also, the public interest is not disserved by preventing an individual from being continuously threatened despite her sworn statements that she has not violated any obligations to Defendant.

**E.**      <u>**The Balance Of The Equities Favors An Injunction.**</u>

If Meyer's requests for a temporary restraining order and preliminary injunction are denied, she will have no method for protecting her right to fully engage in her new role at AcuityMD without constant, unfounded threats from BioMedGPS. BioMedGPS should not be allowed to "sideline" Meyer without any valid non-compete or non-solicitation of customers agreement.

Defendant, on the other hand, are not unduly harmed by an injunction.  The injunction will only prevent BioMedGPS from continuing to engage in harassing and bullying behavior, that is not warranted under the facts.

Thus, the harm Meyer has suffered or will suffer without injunctive relief substantially outweighs any reason for denying Meyer a temporary restraining order and preliminary injunction.

**F.**      <u>**An Injunction Will Preserve the Status Quo Pending Trial On The Merits.**</u>

Finally, temporary restraining orders and preliminary injunctions are designed to preserve the status quo or to protect a party's rights pending the final determination of a cause.  *Keller Corp. v. Kelley*, 187 P.3d 1133, 1137 (Colo. App. 2008).  The status quo is not maintained if irreparable

EXHIBIT A

harm will occur absent an injunction.  *Id.*  As set forth above, without immediate and meaningful injunctive relief, Meyer will suffer irreparable harm.  In that event, the status quo will not be maintained.  Thus, an injunction is proper.

## II.   THE COURT SHOULD REQUIRE ONLY A PRO FORMA BOND

The Court should require only a pro forma bond and should decide this issue at the hearing. *See Old Republic Nat. Title Ins. Co. v. Kornegay,* 292 P.3d 1111, 1118 (Colo. App. 2012) (noting in "context of a procedural rule mandating a bond upon issuance of a preliminary injunction, courts have recognized that the bond amount may be set at zero if there is no evidence that the enjoined party will be unable to collect damages in the event of a wrongful injunction").  Defendant faces no serious burden in complying with the injunction.  Thus, a pro forma bond is appropriate.

## <u>CONCLUSION</u>

For the reasons set forth above, Meyer's Motions should be granted and a temporary restraining order and preliminary injunction should be entered.


Dated:  July 29, 2022                                    Respectfully submitted,



                                                         */s/ Michael A. Freimann*
                                                         Michael A. Freimann, Atty. Reg. No. 35430
                                                         Kathleen F. Guilfoyle, Atty. Reg. No. 55284
                                                         ARMSTRONG TEASDALE LLP
                                                         4643 South Ulster Street, Suite 800
                                                         Denver, Colorado 80237
                                                         Telephone:  720.200.0676
                                                         Facsimile:  720.200.0679
                                                         mfreimann@atllp.com
                                                         kguilfoyle@atllp.com

                                                         *Attorneys for Plaintiff*
                                                         *Kristina Meyer*

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                      Centennial, CO 80112<br>Telephone:     303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |
| **DECLARATION OF KRISTINA MEYER** | |

I, Kristina Meyer, hereby declare as follows:

1.      Until June 13, 2022, I was employed by BioMedGPS.

2.      I submit this declaration in support of Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction.

3.      Since my departure from BioMedGPS, BioMedGPS has accused me of violating my obligations under the Confidentiality/Non-Disclosure Agreement. In connection with these accusations, BioMedGPS has demanded that I return any BioMedGPS proprietary information, destroy any copies of proprietary information stored on electronics, sign a statement that I am in compliance with my duties of confidentiality and non-disclosure and that I have not shared any proprietary information with any third party, provide BioMedGPS with any emails I sent to AcuityMD from my personal email account while employed by BioMedGPS, allow BioMedGPS to take a "ghost image" of my personal laptop, and provide an affidavit that I have not given

**EXHIBIT A**

AcuityMD any of BioMedGPS' confidential or proprietary information.

4.      I have offered to provide BioMedGPS an affidavit that states I am not in possession of any of its confidential or proprietary information, I have destroyed the one copy of the document they were concerned about, and I have never shared any of its proprietary or confidential information with my new employer, AcuityMD.

5.      I do not believe I have violated any agreement that I signed with BioMedGPS nor do I plan to violate any agreement in the future.

6.      BioMedGPS has also demanded that for a period of one year, I not attend any industry conferences or contact any of my former customers. It refused or was unable to provide any legal authority to support this request.

7.      Legal action initiated by BioMedGPS against me would greatly interfere with my ability to meet my current job's expectations and would result in me suffering a significant, professional hardship.

8.      On July 13, 2022, counsel for BioMedGPS communicated to my counsel that BioMedGPS would pursue legal action against me personally if I attended a trade conference scheduled for the next two days.

9.      As a gesture of good faith, and in an attempt to resolve their dispute, I voluntarily elected to not attend the trade conference.

10.      As a result, I forfeited the first opportunity I had to generate new customers for my current employer AcuityMD.

11.      I want to be able to perform my new job with AcuityMD without looking over my shoulder and wondering if BioMedGPS is going to commence a legal action and threaten my livelihood.

12.      BioMedGPS has threatened litigation numerous times and continues to threaten imminent legal action regarding its claim that I violated confidentiality and/or other unknown agreements and laws, despite my assurances that I have not.  By way of example, BioMedGPS' latest claim is that I somehow violated the Computer Fraud and Abuse Act.  It is unclear how I committed such a violation.

13.      Despite my best efforts, I have not been able to resolve this matter with BioMedGPS.

14.      I believe that should I attend a trade conference, BioMedGPS will further retaliate against me and initiate litigation.

15.      If BioMedGPS is not enjoined from interfering with my employment, I will suffer imminent, irreparable harm.  Most obviously, I could lose my job.  I will also be forced to forfeit my ability to bring AcuityMD new customers.  Significantly, many customers are currently setting their 2023 budgets.  If I am unable to perform my job duties, even for a short period of time, I risk

DocuSign Envelope ID: C368B4AD-9C08-4E73-A499-EF994FFE22FA

**EXHIBIT A**

losing these customers' business for over a year, which could have an impact on my financial status as well as my ability to maintain my employment.

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on: ___July 29, 2022___, at ___Long Beach Township, NJ___
(date)                              (city & state)

Kristina Meyer

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                       Centennial, CO 80112<br>Telephone:      303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |
| **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** | |

Pursuant to C.R.C.P. 65(b), Plaintiff Kristina Meyer ("Plaintiff" or "Ms. Meyer") moves for a temporary restraining order in the form attached. The grounds for this Motion are set forth in Plaintiff's Memorandum of Law in Support of Motions for Temporary Restraining Order and Preliminary Injunction, which is being filed contemporaneously with this Motion.

The undersigned counsel certifies that Ms. Meyer notified Defendants of her intent to seek immediate injunctive relief on July 29, 2022, by communicating via telephone to Defendant's counsel, as well as sending the Verified Complaint, Motions for Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in Support of those

**EXHIBIT A**

motions, and related Proposed Orders by email. Counsel will coordinate with Defendants for the earliest possible hearing on the temporary restraining order if the Court determines one is necessary. As described in the Verified Complaint, Plaintiff seeks immediate injunctive relief to protect herself from the irreparable harm that may be done to her livelihood if Defendants are not restrained or enjoined from threatening legal action against Ms. Meyer and allowing her to perform her job without any encumbrances.

Granting a temporary restraining order will permit Ms. Meyer a modest amount of time to conduct limited discovery to further support its Motion for a Preliminary Injunction.

WHEREFORE, Plaintiff Kristina Meyer respectfully requests this Court enter a Temporary Restraining Order in the form attached hereto and set a hearing to consider and grant a preliminary injunction.

Dated:  July 29, 2022                    Respectfully submitted,


                                         */s/ Michael A. Freimann*
                                         Michael A. Freimann, Atty. Reg. No. 35430
                                         Kathleen F. Guilfoyle, Atty. Reg. No. 55284
                                         ARMSTRONG TEASDALE LLP
                                         4643 South Ulster Street, Suite 800
                                         Denver, Colorado 80237
                                         Telephone:  720.200.0676
                                         Facsimile:  720.200.0679
                                         mfreimann@atllp.com
                                         kguilfoyle@atllp.com

                                         *Attorneys for Plaintiff*
                                         *Kristina Meyer*

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:    7325 S. Potomac Street<br>                            Centennial, CO 80112<br>Telephone:       303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:**

> **BioMedGPS, LLC d/b/a SmartTRAK**
> c/o Agent Marie May
> 2913 El Camino Real #434
> Tustin, CA 92782

    **YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

**EXHIBIT A**

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: July 29, 2022

Respectfully submitted,

By:   */s/ Michael A. Freimann*
Michael Freimann, Atty. Reg. No. 35430
Kathleen F. Guilfoyle, Atty. Reg. No. 55284
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
mfreimann@atllp.com
kguilfoyle@atllp.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                         Centennial, CO 80112<br>Telephone:        303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>    kguilfoyle@atllp.com | Case Number:<br><br>Div.: |
| **VERIFIED COMPLAINT** | |

Plaintiff Kristina Meyer ("Meyer" or "Plaintiff"), through undersigned counsel, brings the following Verified Complaint against BioMedGPS d/b/a SmartTRAK ("BioMedGPS" or "Defendant"), and allege the following:

## INTRODUCTION

1. This is an action for declaratory judgment.  Meyer is not seeking any monetary damages against Defendant at this time.  Her sole request is to be able to work at her new employer, AcuityMD, and help provide for her family.  BioMedGPS' actions and threats are making that impossible.

2. Since Meyer's departure from BioMedGPS, Defendant has threatened a myriad of legal actions, based on a multitude of alleged violations and breaches.  None of these averments are true and are due to a nonsensical, yet creative, narrative that Defendant is trying to tell.

**EXHIBIT A**

3. At its core, Defendant believes Meyer breached a Confidentiality/Non-Disclosure Agreement by downloading a Master Sales Tracker document ("MST") and by returning her company laptop with the manufacturer default settings.

4. BioMedGPS insisted that Meyer provide it with an affidavit attesting that she had not provided any BioMedGPS confidential or proprietary information to her new employer, AcuityMD. BioMedGPS also demanded access to Meyer's <u>personal</u> laptop so that a third-party forensics expert could examine it and make a "ghost image" of the laptop, allowing BioMedGPS to search the entire personal laptop. BioMedGPS refused to provide any restrictions or limitations on this intrusive search.

5. BioMedGPS has also demanded that for a period of one year, Meyer will not attend any industry conferences or contact any of her former BioMedGPS customers. It refused or was unable to provide any legal authority to support this request.

6. Indeed, on July 13, 2022, BioMedGPS threatened injunctive legal action if Meyer attended a trade conference in Colorado Springs scheduled for the next two days. Although there were no legal grounds for this request, as a gesture of good faith and in an attempt to resolve their dispute, Meyer voluntarily elected to not attend the trade conference.

7. Meyer has started a new job and wants to be able to perform this job without looking over her shoulder and wondering if BioMedGPS is going to commence a legal action and threaten her livelihood.

8. BioMedGPS has threatened litigation numerous times and continues to threaten imminent legal action regarding its claim that Meyer violated confidentiality and/or other unknown agreements and laws.  By way of example, BioMedGPS' latest claim is that Meyer somehow violated the Computer Fraud and Abuse Act.  It is unclear how Meyer committed such a violation.

9. Despite Meyer's best efforts, she has not been able to resolve this matter with BioMedGPS.

10. Based on BioMedGPS' insistence that Meyer has breached agreements and that she may not legally engage in her new employment without encumbrances, Meyer seeks declaratory judgment from the Court that Meyer has not breached any agreement between the Parties, that Meyer is not required to turn over her personal laptop to BioMedGPS, that there is not a valid or enforceable non-compete or non-solicitation agreement between the Parties, and that Meyer may fully engage in her new employment without limitations, including by attending and participating in any trade conference and engaging her former customers, as well as further declarations that the Court may find necessary.

11. Meyer's inability to fully perform her duties in her new employment irreparably harms Meyer's ability to earn a livelihood. Thus, Meyer also respectfully requests this Court preliminarily and permanently enjoin and restrain BioMedGPS from interfering with her current employment or otherwise threatening her livelihood during the pendency of this action and permanently thereafter, as more fully outlined in the concurrently filed Motion for Temporary Restraining Order.

## EXHIBIT A

## PARTIES

12. Plaintiff Kristina Meyer is an individual residing in the County of Arapahoe, State of Colorado.

13. BioMedGPS, LLC is a limited liability company formed in the State of California with its principal place of business in Irvine, California.

## JURISDICTION

14. This Court has subject matter jurisdiction over this action pursuant to Article VI, section 9 of the Colorado Constitution, which provides that the district courts shall have original jurisdiction in all civil cases, and C.R.C.P. 57(a) granting district courts jurisdiction to declare rights, status, and other legal relations.

15. Pursuant to C.R.S. § 13-1-124(1), this Court has personal jurisdiction over Defendant because Defendant has transacted business within the state of Colorado in connection with the claims alleged in this Verified Complaint.

16. Venue is proper in this Court, pursuant to C.R.C.P. 98, because the Defendant is a nonresident of Colorado and transacted business in Arapahoe County as identified in this Verified Complaint.

## GENERAL ALLEGATIONS

17. In March 2015, Meyer began working for BioMedGPS as an independent contractor in the role of Lead Analyst, Sports Medicine.

18. In September 2018, Meyer officially joined BioMedGPS in the dual role of Lead Analyst, Sports Medicine and Director of Sales.

19. In January 2020, Meyer was promoted to VP of Sales.

20. In January 2021, Meyer was again promoted, this time to Chief Commercial Officer.

## A. Contracts between the Parties

21. The Parties have executed several written contracts.

22. These include a Confidentiality and Non-Disclosure Agreement, attached to this Verified Complaint as Exhibit A.

23. Meyer has not entered into any non-compete or non-solicitation of customers agreements.

## B. Meyer's Decision to Leave BioMedGPS

24. Beginning around mid-2020, Meyer noticed a significant shift in BioMedGPS' culture and environment.

**EXHIBIT A**

25. Specifically, Sharon O'Reilly, CEO of BioMedGPS, became highly critical and demanding, creating an extremely stressful environment where workers were degraded and ignored.

26. Other employees also struggled under the stress created by O'Reilly, and communicated their frustrations directly to Meyer, who acted as a "buffer" for these employees.

27. Other issues include nepotism and sexism.

28. O'Reilly hired her brother, Ray Luzi, as a VP at the start of 2022, without alerting the CFO of BioMedGPS that Luzi had never held a VP role or similar position and without conducting an external search to fill the role with a more qualified candidate.

29. Luzi was unqualified to hold his position and had a negative effect on employee morale.

30. O'Reilly also repeatedly commented that "she should hire a young, pretty girl to hand out gift cards to CEOs to get their attention" and also talked often about how she hired attractive women and told people that the attractive women employed by BioMedGPS were her "Charlie's Angels."

31. Meyer made several attempts to speak with co-workers and O'Reilly herself to resolve the work environment problems.

32. In short, O'Reilly created an uncomfortable, harsh, unfair, and frustrating work environment that caused many workers to leave the company.

### C.  Meyer's Departure from BioMedGPS

33. Meyer's attempts to resolve the work environment problems experienced by her and others at BioMedGPS yielded no results.

34. As a result, Meyer made the decision to resign from BioMedGPS.

35. Meyer received and accepted an offer to join AcuityMD, a company that sells complementary products to BioMedGPS' products.  BioMedGPS and AcuityMD are not direct competitors.

36. On June 13, 2022, Meyer gave two-weeks' notice to O'Reilly, and asked what steps she could take to help facilitate the transition. During an eight minute telephone call, O'Reilly did not give Meyer any specific direction in response. O'Reilly vaguely told Meyer "to do what [Meyer] thought was right."

37. Meyer downloaded the MST document containing project and sales information. Meyer's intent was to use the document to help prepare her team for her departure by reassigning open accounts, adjusting quotas, assessing outstanding commissions and planning proper and professional account handoffs, assuming she had two weeks to help facilitate such a transition. Meyer, along with Geoffrey Brown, GM of Sales Operations, routinely used this document for sales tracking and territory planning.

38. The current versions of the MST document are sent via email with the weekly sales call notes and routinely used by the sales team, including by Meyer during her employment.

39. Later on June 13, BioMedGPS shut off Meyer's access to the internal network, and notified Meyer that it did not want her assistance to transition her work and was ending her employment with BioMedGPS that same day.

40. Meyer was only told by Don Urbanowicz, BioMedGPS' former COO, via telephone call that her employment was terminated as of 5pmMT on June 13th, that someone would come to her home to pick up her laptop and that she would be hearing from BioMedGPS lawyers as O'Reilly believed Meyer was going to a competitor. No other direction or advice was offered regarding the proper method of returning her company laptop.

41. Meyer knew that others had returned company laptops with the manufacturer default settings, including three director-level employees. As a member of the executive team, Meyer had never heard a complaint about the laptops returned in this state.

42. Believing this to be the proper procedure, Meyer wiped her company laptop and returned the laptop with the manufacturer default settings. Meyer did not individually delete any files or emails from the laptop. She believed any emails or other documents needed by BioMedGPS were available to BioMedGPS through its internal network, and had no intent to hide any activity, documents, or other information from BioMedGPS.

## D. BioMedGPS' Treatment of Meyer Post-Employment

43. Shortly after her employment with BioMedGPS ended, Meyer began her employment with AcuityMD.

44. A few days after June 13, 2022, Meyer heard from BioMedGPS' lawyers.

45. Counsel had sent a separation agreement letter outlining the commissions and expense report amount owed to Meyer, but also stating that they would strictly enforce her "non-compete" and requested a waiver from Meyer of any claims against them.

46. BioMedGPS' own CFO, Marie May, warned Meyer against signing the document, believing the intention behind the document was to obtain a waiver through promising payment of owed commissions only upon signature.

47. On June 27, 2022, Meyer again heard from BioMedGPS' lawyer, this time accusing Meyer of breaching her obligations under the Confidentiality/Non-Disclosure Agreement.

48. The June 27 letter incorrectly stated that Meyer downloaded the MST document after she was informed that her access to BioMedGPS' internal network would be shut off and that she had never before downloaded the MST.

49. The June 27 letter accuses Meyer of downloading the document with the intent to retain and use any confidential information in the MST document in her new employment with AcuityMD.

**EXHIBIT A**

50. The letter also accuses Meyer of intentionally destroying company proprietary data in resetting her company laptop to its manufacturer default settings in violation of her obligations under the Confidentiality/Non-Disclosure Agreement and "applicable law."

51. BioMedGPS made several demands, including that Meyer (1) return any BioMedGPS proprietary information, (2) destroy any copies of proprietary information stored on electronics, and (3) sign a statement that Meyer is in compliance with her duties of confidentiality and non-disclosure and that she has not shared any proprietary information with any third party.

52. Without citing a contractual provision for its basis, BioMedGPS has also demanded that that for a period of one year, Meyer will not attend any industry conferences or contact any of her former BioMedGPS customers.

53. Indeed, on July 13, 2022, BioMedGPS threatened injunctive legal action if Meyer were to attend a trade conference in Colorado Springs scheduled the next day. As a result, Meyer voluntarily did not attend the trade conference.

54. A large portion of attendees at the July 14-15 conference were Meyer's contacts prior to joining BioMedGPS. By insisting Meyer not attend, BioMedGPS effectively cost Meyer the opportunity to perform the duties of her new role with AcuityMD.

55. BioMedGPS has since made further demands, including that Meyer (1) provide BioMedGPS with any emails Meyer sent to AcuityMD from her personal email account while employed by BioMedGPS, (2) allow BioMedGPS to take a "ghost image" of her personal laptop, and (3) provide an affidavit that Meyer has not given AcuityMD any BioMedGPS confidential or proprietary information.

56. BioMedGPS is also seeking an affidavit from AcuityMD swearing the same.

57. Meyer has destroyed the sole copy of the MST document in her possession and does not have other BioMedGPS information.

58. Meyer agreed to provide an affidavit attesting she has not violated and has no intention of violating the Confidentiality/Non-Disclosure Agreement, that the sole copy of the MST document in her possession was destroyed, and that she has not provided any confidential or proprietary information to AcuityMD.

59. These assurances are apparently not enough for BioMedGPS, which insists that Meyer hand over her personal laptop for a ghost image to be created and inspect any emails she has sent to her current employer AcuityMD.

60. Meyer cannot agree to provide her personal laptop, which contains private and confidential financial, medical, and other information BioMedGPS has no right to examine.

61. It is not clear why BioMedGPS needs to examine Meyer's computer if they are also requesting that she submit a sworn affidavit.

62. Meyer wants to commence her new job but is concerned that any action she takes will result in BioMedGPS falsely claiming she violated an agreement and attempting to obtain injunctive relief.

63. Meyer has tried to amicably resolve this dispute with BioMedGPS but its list of demands continues to grow and become more and more unreasonable. BioMedGPS has now directly involved AcuityMD.

64. BioMedGPS' latest attempt to intimidate Meyer into not pursuing gainful employment with AcuityMD and handing over a personal laptop includes threatening to sue Meyer in federal court for trade secret misappropriation and violations of the CFAA.

## COUNT I:
### Declaratory Judgment
### (C.R.S. § 13-51-106 and C.R.C.P. 57(b))

65. Plaintiff re-alleges by reference all the aforementioned Paragraphs as though fully set forth herein.

66. Colorado's Uniform Declaratory Judgment Act provides, in its pertinent part, that

Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

C.R.S. § 13-51-106.

67. In Colorado, a party to a contract may seek declaratory judgment to determine unclear rights and/or obligations. A party may also seek declaratory judgment to determine whether a valid contractual obligation exists or does not exist.

68. There is a presently existing controversy: BioMedGPS insists that Meyer has breached confidentiality obligations, and Meyer maintains that she has not. BioMedGPS continuously threatens litigation to intimidate Meyer into not attending trade conferences and restricting with which customers she can meet.

69. This controversy is preventing Meyer from fully participating in her new position with AcuityMD. If it continues—and it appears it will—Meyer may run the risk of losing her new job.

70. Meyer's rights to pursue gainful employment is a legally protected interest heavily valued by the State of Colorado.

71. These rights have already been affected, and Meyer has been injured, by BioMedGPS' threats as she did not attend a trade conference for fear of further retaliation.

**EXHIBIT A**

72. Thus, the rights at issue are present and cognizable.

73. A declaratory judgment by this Court will fully and finally resolve the uncertainty and controversy as to all parties with a substantial interest who could be affected by the judgment.

74. Thus, Plaintiffs seek a judgment from this Court declaring:

    a.  that Meyer has not breached any agreement between the Parties,

    b.  that Meyer is not required to turn over her personal laptop to BioMedGPS,

    c.  that there is not a valid or enforceable non-compete or non-solicitation of customers agreement between the Parties,

    d.  and that Meyer may fully engage in her new employment without restrictions, including by attending and participating in any trade conference and engaging her former customers, as well as further declarations that the Court may find necessary.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and that this Court:

A.     Grant declaratory relief as outlined in Paragraph 74 of this Verified Complaint;

B.     Award costs and attorney fees as the Court may deem equitable and just; and

C.     Award Plaintiff any other relief reasonably resulting from the Defendant's conduct that the Court deems just and equitable under the circumstances.

**EXHIBIT A**

Dated:  July 29, 2022

Respectfully submitted,

*/s/ Michael A. Freimann*
Michael A. Freimann, Atty. Reg. No. 35430
Kathleen F. Guilfoyle, Atty. Reg. No. 55284
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
mfreimann@atllp.com
kguilfoyle@atllp.com

*Attorneys for Plaintiff*
*Kristina Meyer*

DocuSign Envelope ID: C368B4AD-9C08-4E73-A499-EF994FFE22FA

**EXHIBIT A**

## **VERIFICATION**

The undersigned, Kristina Meyer, states that she is the Plaintiff in this action and that the facts set forth in the Verified Complaint are true and accurate to the best of her knowledge based on the information available to her, including through reasonable investigation of facts known to her.

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on: ___July 29, 2022___, at ___Long Beach Township, NJ___
                              (date)                          (city & state)

DocuSigned by:

*Kristina Meyer*

3D4B60DE2B5C44A
Kristina Meyer

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>Court Address:   7325 S. Potomac Street<br>                       Centennial, CO 80112<br>Telephone:       303-645-6600 | |
| **Plaintiff:**<br><br>Kristina Meyer<br><br>v.<br><br>**Defendant:**<br><br>BioMedGPS, LLC d/b/a SmartTRAK | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br>Michael Freimann, Atty. Reg. No. 35430<br>Kathleen F. Guilfoyle, Atty. Reg. No. 55284<br>ARMSTRONG TEASDALE LLP<br>4643 South Ulster Street, Suite 800<br>Denver, Colorado 80237<br>Phone Number: 720-200-0676<br>Fax Number: 720-200-0679<br>E-mail: mfreimann@atllp.com<br>kguilfoyle@atllp.com | Case Number:<br><br>Div.: |

**ACKNOWLEDGMENT, WAIVER AND ACCEPTANCE OF SERVICE**

I, Ramon Rhymes, as attorney for BioMedGPS, LLC d/b/a SmartTRAK, hereby acknowledge receipt and accept service of the on its behalf of the following: *(1) District Court Civil Summons; (2) Verified Complaint; (3) District Court Civil (CV) Case Cover Sheet for Complaint; (4) Motion for Preliminary Injunction; (4) Motion for Temporary Restraining Order; (5) proposed Order for Preliminary Injunction; (6) proposed Temporary Restraining Order; (7) Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction; (8) Declaration of Kristina Meyer* in the above-mentioned matter. I further state that I am over the age of eighteen years and am authorized to accept service of process and to execute this Acknowledgment, Waiver and Acceptance of Service.

Date:   August 4, 2022

Ramon Rhymes, Esq.
3i Law
2000 S. Colorado Blvd
Tower 1, Ste. 10000

**EXHIBIT A**

Denver, Colorado 80222
Tel: 303-478-6244
rrhymes@3ilawfirm.com

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 South Potomac Street<br>Centennial, Colorado 80112 | DATE FILED: July 29, 2022 3:19 PM<br>CASE NUMBER: 2022CV31421 |
| Plaintiff(s): Kristina Meyer<br><br>v.<br><br>Defendant(s): BioMedGPS, LLC | ▲ COURT USE ONLY ▲<br><br>Case Number: 22CV31421<br>Div. 202 |
| **DELAY REDUCTION ORDER**<br>(FOR CASES FILED ON OR AFTER JULY 1, 2015) | |

This Court is on a delay reduction docket.

    A.   For all civil actions, the following deadlines must be met:

        1.   <u>Service of Process</u>:  Returns of service on all defendants shall be filed within **63 days** after the date of the filing of the complaint.

        2.   <u>Default Judgment</u>:  Application for default judgment shall be filed within **35 days** after default has occurred.

        3.   <u>Case Management</u>:  Whether a Case Management Conference is required is determined by each Division.

        4.   <u>Trial Setting</u>: Parties shall comply with the procedure for setting trial as determined by the Judge presiding over the Division to which the case has been assigned.

            a.   Actions governed by C.R.C.P. 16 shall be set for trial within **49 days** of the "at issue" date and generally trial will be set within **1 year** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

            b.   Actions governed by C.R.C.P. 16.1 shall be set for trial within **42 days** of the "at issue" date and generally trial will be set within **6 months** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

    B.   A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

**EXHIBIT A**

C.   Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

D.   Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.   If an attorney or self-represented party failed to comply with the Order, the Court may dismiss the case without prejudice.

Date: 7/29/2022

BY THE COURT:
ASSIGNED JUDGE

2